Willie JONES, Calvin Byrd and
Arthur Lee Jones

v.

CITY OF PHILADELPHIA, Officers H.
Muntz, J. Delgado, John Doe, and
Joseph O'Neill.

Civ. A. No. 76–1476.

United States District Court,
E. D. Pennsylvania.

May 12, 1980.

Lee M. Herman, Bayer, Herman & Leizerowski, Philadelphia, Pa., for plaintiffs.

Paul R. Sacks, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

On October 30, 1979, I dismissed plaintiffs' second amended complaint, allowing leave to amend. That complaint, alleging police misconduct, and naming as defendants not only three police officers and former Police Commissioner O'Neill, but also the City of Philadelphia, looked directly to the Fourteenth Amendment as the source of the asserted federal cause of action. I held that the decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)—which held that the cause of action for official infringements of constitutional rights conferred by 42 U.S.C. § 1983 runs not only against municipal employees but, in certain exigent circumstances, against the municipality itself—afforded sufficient vindication of Fourteenth Amendment guarantees so as to obviate the implication of a cause of action based directly on the Amendment. See *Jones v. City of Philadelphia*, 481 F.Supp. 1053 (1979).

Plaintiffs filed a third amended complaint on December 20, 1979; and, on January 14, 1980, defendants again moved to dismiss. Plaintiffs belatedly responded to the most recent motion to dismiss on February 29, 1980. While the defendants' motion to dismiss attempted to refute *seriatim* the legal bases for the omnibus claims contained in plaintiffs' latest complaint, plaintiffs' response amounts to little more than a generalized assertion that the complaint conforms to the requirements of *Monell*.

The new complaint sets forth the same basic factual scenario set forth in the dismissed complaint—that on May 13, 1975, plaintiffs were at the Liberty Fair in Philadelphia, "comporting themselves in a quiet, peaceful and lawful manner, when they were escorted from the fair by" several police officers; that as plaintiffs were departing from the fair in an automobile, "defendant Doe threw a nightstick into the front window of the automobile, and defendants Muntz and Delgado and Doe began to open fire with guns," injuring plaintiffs; that plaintiffs were then arrested without probable cause in order to conceal defendants' actions.

The new complaint adds the following allegations: (1) that both the initial assault and the subsequent arrest were the product of a conspiracy amongst Muntz, Delgado and Doe; (2) that defendants O'Neill and City of Philadelphia caused the injuries by their "deliberate acts and gross and reckless negligence" in failing properly to train and supervise the individual officers; (3) that plaintiffs are black citizens and defendants "were motivated by unlawful racial considerations;" and (4) that defendants' acts were committed under color of state law.

The "action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(1), (2), (3), (4) . . . ." In addition, plaintiffs identify causes of action arising under state law, for which they invoked this court's pendent jurisdiction.

## I

At the outset we deal with plaintiffs' claims under 42 U.S.C. § 1983. As against the city and the police commissioner, the operative language in the complaint charges that, "Defendants O'Neill and City of Philadelphia, by their deliberate acts and gross and reckless negligence in failing to adequately train, supervise and discipline the individual officers, defendants here, and other officers in the Philadelphia Police Department, directly caused the injuries and harm suffered by the plaintiffs."

 It is clear that plaintiffs have not, in this paragraph or anywhere else in their complaint, alleged a governmental policy or custom which might give rise to municipal liability under the standards set forth in *Monell v. Department of Social Services, supra.* Negligence, whether conclusorily described as "gross" or otherwise, is clearly insufficient under the standards set forth in *Monell.* Indeed, even the "deliberate act" of a city official, absent the trappings of official policy or custom, will not serve as a basis for municipal liability under § 1983. Thus, plaintiffs' § 1983 claims against the City of Philadelphia will be dismissed.

 The claim stated against Commissioner O'Neill is no stronger. Negligent supervision does not suffice as a basis for § 1983 liability. *Schweiker v. Gordon,* 442 F.Supp. 1134 (E.D.Pa.1977); *Jones v. McElroy,* 429 F.Supp. 848 (E.D.Pa.1977). A greater degree of personal culpability is required. "The cases suggest that relief may not be obtained against supervisors unless they have participated in the offending conduct or have knowledge of or acqui-

escence in the constitutional deprivation." *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 151 (E.D.Pa.1977). The attempt to invoke a higher standard of culpability by the unelaborated use of the phrase "gross and reckless negligence," will not salvage a claim the gravamen of which is inadequate training and supervision. *Jones v. McElroy, supra.* Even if the term "reckless" is read as an implicit assertion of knowledge or acquiescence on the part of the supervisor, the bare assertion of knowledge, absent some factual recitation from which its source and scope may be gleaned, will not insulate a civil rights complaint such as this from a motion to dismiss. *Schweiker v. Gordon, supra.* The complainant's allusion to unspecified "deliberate acts," should fare no better. The § 1983 claim against O'Neill will, therefore, be dismissed.

 Although defendants appear to seek dismissal of the § 1983 claims against Officers Muntz, Delgado and Doe, their memorandum of law does not clarify the basis of their objection. To the contrary, the complaint adequately describes these defendants' participation in the shooting incident and the subsequent arrest. The § 1983 claims against these defendants will be allowed to proceed.

## II

 Plaintiffs assert claims against all defendants arising under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. By its terms, § 1985(3) prohibits only concerted activity.[1] The complaint alleges joint activ-

---

1. Section 1985(3) of Title 42 provides:

 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or

 threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercis-

ity on the part of the individual police officers in assaulting the plaintiffs, and further charges those officers with a conspiracy to cover up their actions and thwart plaintiffs in any resultant litigation. The further allegation is made that the defendants were motivated in their actions by racial animus. Thus the § 1985(3) claim against these defendants is sufficiently alleged.

■ The complaint is devoid, however, of any allegation that either Commissioner O'Neill or the City of Philadelphia was party to the alleged conspiracy among the individual officers. Thus, as to these defendants, the § 1985(3) claim must be dismissed. Moreover, since the complaint fails even to allege knowledge of the conspiracy on the part of the City or the Commissioner, the attempt to state a claim against these defendants under 42 U.S.C. § 1986 must, by the clear language of the statute,[2] fail as well.

### III

■ Finally, it is necessary to consider the claim alleged to arise under 42 U.S.C. § 1981.[3] It may fairly be assumed that plaintiffs' reference to § 1981 is intended to encompass the whole of defendants' alleged

wrongful conduct under what the Court of Appeals for the Third Circuit has referred to as the "equal benefit" and "like punishment" clauses of that section. See *Mahone v. Waddle*, 564 F.2d 1018 (1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147. As construed by the Court of Appeals, those clauses of § 1981 have broad applicability, encompassing police conduct which may also fall within the prohibition of § 1983. Indeed, the claim approved in *Mahone* was, in rough parameters, comparable to that alleged here.[4] But perhaps most significantly for present purposes, *Mahone* held that the municipal "immunity" identified in 42 U.S.C. § 1983 by *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), was without counterpart in 42 U.S.C. § 1981. And in holding municipalities to be potential § 1981 defendants, the Court of Appeals embraced a theory of municipal liability encompassing *respondeat superior*—a theory of liability much broader than the basis for liability subsequently determined to be appropriate under § 1983 by the Supreme Court in *Monell*. Thus, if plaintiffs can prove their § 1981 claim against the individual police officers, the City is likely to be held vicariously liable.[5]

ing any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

2. Section 1986 of Title 42 provides in relevant part that:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . .

3. Section 1981 of Title 42 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of per-

sons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

4. In *Mahone*,

Plaintiffs . . . alleged that the City's police officers, clothed with the authority of the City and the state and motivated by racial bias, verbally and physically abused them, falsely arrested them, and gave false testimony against them.

564 F.2d at 1028. The absence of an allegation of "verbal abuse" in the case at bar does not persuasively distinguish this case from *Mahone*. See *Croswell v. O'Hara*, 443 F.Supp. 895, 897 (E.D.Pa.1978).

5. Defendants have not challenged the continued vitality of the vicarious liability aspect of *Mahone* in light of the Supreme Court's *Monell* reasoning, but the question is an interesting one. The precise scope of municipal liability does not appear to have been at issue in *Mahone*. Moreover, in contrasting municipal liability under the two sections, the Court of Appeals emphasized (1) the absence of the limit-

■ Of course, racial animus is a necessary element in a § 1981 claim. Here, plaintiffs have alleged that they are black and that the "acts of the defendants were motivated by unlawful racial considerations." Defendants argue that these allegations are not sufficiently specific to state a civil rights claim. Defendants argue that the apparent fact that all plaintiffs are black and none of the individual defendants is (although this fact is not alleged in terms in the complaint, it is assumed in defendants' motion papers), coupled with a bald assertion of racial motivation, is not a sufficient predicate for § 1981 liability.

In *Croswell v. O'Hara*, 443 F.Supp. 895 (E.D.Pa.1978), Judge Luongo considered a § 1981 claim which alleged racial prejudice with no more specificity than the one at issue here. He rejected defendants argument.

The matter being alleged is . . . difficult to support with specific averments in a pleading. Proof of racial motivation depends on an overall analysis of the totality of factual circumstances, and such matters normally do not lend themselves to more than conclusory allegations . . . Certainly the fact that plaintiff and defendants were of different races gives rise to the possibility that defendants' acts were racially motivated. A great deal more is needed to prove the issue, but, in the absence of a more adequate method of pleading, I conclude that plaintiff's allegation of discriminatory intent in this case is sufficient. (citations omitted)

443 F.Supp. at 897. In this comparable setting, I will allow plaintiffs' comparable claim to stand. In so doing I recognize the considerations which have forced the courts towards a requirement of "fact pleading" in civil rights cases. In particular, I am cognizant of the potential for abuse, in a case such as this, where the survival of the § 1981 claim through the early stages of the proceeding serves to keep the deep pocket of the municipality in the lawsuit where it can be the target of pendent state claims. But I must assume that the very serious allegation of racial motivation, here offered for the first time in this case in the third amended complaint, has been tendered in good faith. And if it appears after a period of discovery that the charge is not supported by evidence, defendants will no doubt move for summary judgment.

■ Finally, we consider the § 1981 claim asserted against Commissioner O'Neill. As noted above, O'Neill is one of the defendants whom plaintiffs charge with "unlawful racial motivation." But, as noted above, plaintiffs have not averred that O'Neill participated in, or had knowledge of, the alleged wrongful acts of the individual officers. They have not pleaded specific facts demonstrating that O'Neill might have anticipated the alleged unlawful actions. And inasmuch as O'Neill was not the employer of the police officers, he cannot be held vicariously liable for their unconstitutional conduct. Thus it is clear that the § 1981 claim against O'Neill must be dismissed. *Croswell v. O'Hara, supra; Preston v. City of York*, 452 F.Supp. 52 (M.D. Pa.1978).

IV

By way of summary:

(1) The federal claims against Commissioner O'Neill, as set forth in the third amended complaint, will be dismissed. And since the pleading sets forth no valid feder-

ing term "persons" in the operative language of § 1981 and, (2) the independent legislative history applicable to the two sections. The *Monell* decision appears to obviate entirely the significance of the first of the distinctions propounded by the Court of Appeals—the absence of the word "persons" from § 1981—and the impact of the second distinction on the scope of *municipal liability is tempered somewhat by* the *Monell* Court's reliance on textual exegesis, rather than legislative history, in determining

that municipal liability could not be predicated on the doctrine of *respondeat superior*. This is not to say that there may not be significant differences in the history, language, purpose and constitutional foundation of the two sections which would support differences in the scope of municipal liability under each. In any case, the parties have not asked me to address this issue and the judgment of the Court of Appeals in *Mahone* remains the standard to be applied in the courts of this district.

al claim against Commissioner O'Neill, I will not retain pendent jurisdiction over the state claims asserted against him. See *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

(2) All federal claims against the City of Philadelphia, with the exception of those brought under 42 U.S.C. § 1981, will be dismissed. Pendent jurisdiction will continue to provide a basis for the various state law claims against the City.

(3) As against the individual officers, the motion to dismiss will be denied in its entirety.