### Jay LARSON, Plaintiff,

v.

### Thomas WIND, et al., Defendants.

### No. 81 C 1061.

United States District Court,
N. D. Illinois, E. D.

Feb. 22, 1982.

---

Steven J. Rosenberg, Chicago, Ill., for plaintiff.

Wayne B. Giampietro, Gregory N. Freerksen, DeJong, Poltrock & Giampietro, Chicago, Ill., for defendants Gorr and Village of Addison.

John B. Murphy, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendants Esposito and Village of Villa Park.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Jay Larson ("Larson")[1] originally sued the Villages of Addison ("Addison") and Villa Park ("Villa Park"), the City of Elmhurst ("Elmhurst"), Addison police officer Thomas Wind ("Wind"), an unidentified Villa Park police officer (since identified as

---

1. Larson died January 25, 1982, and motions dealing with substitution of a party plaintiff and possible non-survivability of claims are now being briefed. For convenience this opinion will continue to refer to "Larson" throughout.

Genaro Esposito, "Esposito," though not yet named as a party defendant) and other unidentified police officers, alleging that all defendants violated Larson's civil rights in connection with the claimed December 28, 1980 shooting of Larson by Wind. Complaint Count I seeks relief under 42 U.S.C. § 1983 ("Section 1983"). Counts II through IV assert various tort theories.[2] Counts V and VI, added by amendment November 17, 1981, and joining Addison Police Chief Alexander Gorr ("Gorr") and Villa Park Police Chief William Kohnke ("Kohnke"), do not specify their theories of action but appear to be asserted under Section 1983.

Addison, Gorr, Villa Park and Esposito have moved for summary judgment as to all claims against them. For the reasons contained in this memorandum opinion and order defendants' motions are denied.

### Background Facts[3]

Larson alleges that on December 28, 1980 he was driving his automobile in Addison when he was "confronted by an Addison police officer." Larson refused to stop at the officer's directive, and an automobile chase ensued through Addison, Villa Park and Elmhurst (at speeds reaching 130 m. p. h.). Police officers from all three municipalities joined in the chase. Larson allegedly decided to surrender "shortly thereafter" and voluntarily stopped his automobile at 405–07 Hamilton Street in Villa Park. When he got out of the automobile Larson was shot by Wind, allegedly without justification.

### Larson's Changed Theories of Liability

In response to the current motions Larson has shifted ground considerably in asserting liability of the various defendants. Though the Complaint has not been amended to catch up to Larson's changed theories, this opinion will deal with his present positions, which may be summarized as follows:

2. This Court's May 21, 1981 memorandum opinion and order (the "Opinion") dismissed Count III as to the three municipalities on grounds that support total dismissal of that Count.

3. As in the Opinion this section draws its background "facts" from allegations in the Com-

*Addison,* which employed Wind at the time of the shooting, caused Larson's injury through (1) its lack of training and supervision of its police officers, including the absence of any policies, procedures or guidelines covering the use of firearms, (2) its reckless hiring and screening procedures for police officers and (3) a *post hoc* condonation or ratification of Wind's actions.

*Gorr,* who was Addison's temporary police chief at the time of the shooting, is liable on essentially the same grounds as Addison: by failing to implement procedures or guidelines that might have prevented the shooting.

*Esposito,* who participated in the arrest (though he physically subdued Larson's passenger rather than Larson himself), was a primary antagonist at the scene of the shooting. By his own actions he helped create an atmosphere of lawlessness and violence, of which the shooting was a direct and natural consequence. Esposito also failed to insure that Larson was transferred to a hospital promptly after the shooting.

*Villa Park* was delinquent as to Esposito, just as Addison was as to Wind. Villa Park too failed to implement specific policies or guidelines on firearm use and the use of deadly force, establishing a causal link between Villa Park and Esposito's behavior.

As to each of the municipal defendants Larson must prove for Section 1983 liability that the claimed constitutional violations by police officers were the product of governmental "policy" or "custom." *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). *Monell, id.* at 690 n.55, 98 S.Ct. at 2035 n.55, also negates respondeat superior

plaint, for they represent Larson's sworn version of the facts and must be taken as true in ruling on defendants' motions. To the extent the moving defendants are implicated by other facts adduced in connection with the summary judgment motions, those facts will be referred to at appropriate places in this opinion.

liability as to Gorr. Because this opinion finds Larson's Section 1983 claims still viable, it will not treat with the proof requirements for his pendent state law claims.

### Defendants' Motions

*Addison*

For Addison to have "caused" Larson's injury under *Monell*, Larson must produce evidence of an Addison "custom" or "policy" that led in some way to his injury. Mere governmental negligence is not enough to demonstrate a "custom" or "policy," *Spriggs v. City of Chicago*, 523 F.Supp. 138, 143 (N.D.Ill.1981): [4]

> What are needed instead are averments that municipal inaction has been reckless, defined here to mean inaction which has created a substantial probability that undesirable subordinate behavior will manifest itself in increased and significant amounts.

Accord, such cases as *Leite v. City of Providence*, 463 F.Supp. 585, 590 (D.R.I.1978).

Larson points to deposition testimony of Gorr and Addison Police Lieutenant Robert Tyndall, which Larson characterizes as suggesting that the training received by Addison police officers in connection with firearm use and the use of deadly force "was and is dangerously close to no training at all." Gorr testified Addison has no requirement that its officers receive training in the use of deadly force, has no definition of a well-trained officer, and has no written training goals. Tyndall's testimony was comparable.

Addison and Gorr respond in part by citing (1) Addison's adoption (through its Police Department Rules and Regulations) of the Illinois statutory limitations on the use of force in making arrests and (2) Wind's accurate summary of the statutory standard during his deposition. But the essence of a lack-of-training claim is not that the rules do not exist, or even that they are not known. ·Rather the claim is that they have not been inculcated so that they will be adhered to in the situations of extreme stress when they become relevant. On that score the evidence must be viewed in the light most favorable to Larson as the party resisting summary judgment. Addison's proof that Wind attended a 1976 basic training course (including firearm-related training) at the University of Illinois, and that Addison holds monthly shooting exercises, simply poses factual issues.

Addison could be found liable by a jury if the jury viewed Addison's omissions as so severe as to reach the level of "gross negligence" or "deliberate indifference" to deprivation of Larson's constitutional rights (*Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979)) or recklessness under the *Spriggs* definition. Fact issues therefore prevent summary judgment on *Monell* grounds.[5]

*Gorr*

Gorr has moved for summary judgment on the already-discussed Addison grounds and one other: Because he first became temporary head of the Addison police in October 1980 he cannot be held liable for a departmental custom or policy (assuming one existed) that eventuated in Larson's shooting less than three months later. That appealing argument must be fleshed out, for it too is essentially factual and poses a number of unanswered questions.

---

**4.** Counsel for both sides indulge the common error of invoking case law authorities on pleading requirements in support of their arguments on summary judgment. On the latter score Fed.R.Civ.P. ("Rule") 56(e) precludes reliance on allegations—*facts* are the touchstone, albeit with all reasonable inferences taken in Larson's favor. So it is that although a mere *allegation* of "custom" or "policy" may withstand a *motion to dismiss* (an issue on which a difference of view exists within this District Court), to prevent *summary judgment* in favor of a mu-

nicipality or supervisory official a plaintiff must adduce *facts* that would enable a jury to find a "custom" or "policy." Thus the citation to *Spriggs* is not an endorsement of what "averments" are necessary; it is made because *Spriggs* states accurately what the Section 1983 plaintiff must *prove* against a municipality under *Monell*.

**5.** Because the suit against Addison remains viable, Larson's other arguments need not be treated with.

Summary judgment is a singularly inappropriate vehicle to deal with such issues. Attenuated theories of liability can almost always survive summary judgment motions, even though the likelihood of success at trial may be remote. Gorr's motion too must be denied.

*Esposito*

Esposito poses very different problems, for he was directly involved in the arrest. This opinion has already identified the "unlawful climate" and delayed-hospital-transfer theories on which Larson relies.

■ On the first of these there is clearly enough evidence to pose a factual issue. One passage from the deposition of Steven Pecoraro, who was Larson's passenger that night, will suffice. Pecoraro testified that after Larson's car came to a stop several officers ran to the car, brandishing their weapons through the car windows and screaming at Larson and Pecoraro. After Pecoraro was removed from the car, he says he was clubbed over the head by Esposito and handcuffed. Esposito then purportedly said:

> Okay, tough guy... If you make a move, I'll kill you... And with this, he takes a .357, clicks the trigger back, puts it up against my forehead like real hard without moving my head back too much, and the Addison police officer walked around the back of me and he says, "Punk, make one move when we change handcuffs and your dead. I'll kill you right now."

Such police behavior, if credited by a jury, could lead it to impose Section 1983 liability for the harm inflicted upon Larson by another officer. Esposito mistakenly argues, based on authority like *Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir. 1981) and *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972), that Larson cannot read into this case a duty to prevent Wind's behavior. That misses the point. Larson argues Esposito and the other unidentified officers also caused the shooting by their participation in a festival of unrestraint.

Under Larson's theory this is not a shooter-nonshooter case like *Hampton v. Hanrahan*, 600 F.2d 600, 626 (7th Cir. 1979). By their claimed conduct Esposito and the unidentified officers are assertedly implicated in the shooting fully as much as Wind, who pulled the trigger.

That contention does not, as Esposito contends, "extend civil rights liability light years beyond its present bounds." It rather calls on a factfinder to conclude that a claimed assault by a group of armed police is not an individual undertaking—each officer's conduct may draw sustenance from the acts of the others. Neither the enterprise nor the liability is necessarily compartmentalized. Again taking the evidence most favorably to Larson, the Court denies summary judgment on that ground.

On the "failure to transport" claim, too, there is a material factual dispute. *White v. Rochford*, 592 F.2d 381, 383–84 (7th Cir. 1979) upheld a Section 1983 cause of action where police officers refused to lend aid to children endangered by performance of the officers' official duties. It added a relevant dictum, *id.* at 383:

> ... the Due Process Clause is implicated where a policeman ... withholds needed medical assistance from someone in his custody.

On the version of the facts most favorable to Larson, Esposito had Larson in his custody following the shooting. *White* indicates Esposito's failure to assure prompt medical assistance creates potential Section 1983 liability.

■ Larson has adduced some evidence to show that the Villa Park ambulance remained at the shooting scene between one-half hour and one hour, that the nearest trauma center was only five minutes away, and that the ambulance left the scene without lights or siren. Esposito may persuade the trier of fact, as he claims, that the paramedics made those decisions and he could not have controlled them. That however is an issue to be resolved at trial rather than by summary judgment.

*Villa Park*

 Larson's scant evidence as to Villa Park's deficient policies is able—by a hair—to withstand Villa Park's motion. If a jury credited only that evidence, it could find that in the circumstances the absence of any such policies or guidelines caused Esposito's behavior. That being so, the earlier discussion as to Addison's potential liability applies to keep Villa Park in the case.[6]

### Conclusion

All four summary judgment motions are denied.[7] This Court will address the survivability issue (see n.1) as soon as it is fully briefed.

---

**6.** In one respect Villa Park's exposure is more attenuated than Addison's. Both are predicated on the alleged failure to have a policy on deadly force. But such failure by Addison bears a closer nexus to Wind's *shooting* of Larson than does Villa Park's like failure to Esposito's gunslinging (not shooting). All the same, the question of causation is a factual one for trial.

**7.** It may well be that the traditional summary judgment test has done poor service here. If a jury *were* to credit the Larson version of the facts, perhaps a judgment n. o. v. would be in order—at least as to some defendants. Why then keep them in the case? This Court can only point to the case law that supports a different legal rule on a post-trial motion, because at that time the evidence may be judged for credibility (improper at summary judgment time). *See* 6 Moore's Federal Practice, Part 2, ¶ 56.15[6] at 56–601 (1980); 10 C. Wright & A. Miller, Federal Practice & Procedure, § 2728 at 553 (1973). *Weit v. Continental Illinois Bank*, 641 F.2d 457, 461 (7th Cir. 1981) suggests a possibly different resolution, but this Court does not view *Weit* (given the context in which that decision was rendered) as compelling summary judgment here.