**Dean KOCH, Plaintiff,**

v.

**George SCHNEIDER, Dennis Miller, Milo Rafelli, and Village of Justice, Defendants.**

**No. 81 C 1709.**

United States District Court, N.D. Illinois, E.D.

Aug. 23, 1982.

Anesi, Ozmon, Lewin & Assoc., Ltd., Maureen A. Mitchel, Chicago, Ill., for plaintiff.

Judge, Drew, Cipolla & Kurnik, Ltd., William W. Kurnik, Park Ridge, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Dean Koch brings this action under 42 U.S.C. § 1983 against Police Officers George Schneider ("Schneider") and Dennis Miller ("Miller"), Chief of Police Milo Rafelli ("Rafelli") and the Village of Justice ("Village"), to redress alleged violations of his Eighth and Fourteenth Amendment rights. Schneider and Miller have moved to dismiss Count III for failure to state a claim upon which relief may be granted. Rafelli and the Village have similarly moved to dismiss Counts IV and V, respectively. For the reasons stated below, Count III is dismissed, but the motion to dismiss Counts IV and V is denied.

Accepting plaintiff's allegations as true for purposes of this motion, *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978), the following facts form the basis of this lawsuit. On March 13, 1979 plaintiff's automobile went into a drainage ditch in the Village of Justice. He left to seek assistance in removing his car and upon his return found Officer Schneider there with a tow truck. Schneider refused plaintiff's request that he be permitted to tow the auto and then, without cause or justification, the police officer physically restrained plaintiff, pinned his arms together,

threw him against the car, handcuffed him and shoved him into the squad car. Without informing the plaintiff of his rights or the charges against him Schneider drove him to the police station, where he dragged plaintiff from the vehicle by his legs. Once in the station Schneider struck plaintiff on the back of the head with a flashlight, knocking him unconscious. Officer Schneider, in a conspiracy with Officer Miller, then charged the plaintiff with damage to city property, and with battery.

In Count I plaintiff avers that Schneider violated § 1983 by falsely and maliciously charging him with damage to city property and with battery. Additionally, plaintiff states that his arrest without probable cause deprived him of liberty without due process of law. In Count II plaintiff alleges that Schneider used unreasonable and excessive force in arresting and detaining him, in violation of § 1983. Count III contains allegations that Officers Schneider and Miller conspired to bring a false complaint against him and to offer false testimony at a trial on these charges. Finally, Rafelli and the Village of Justice, in Counts IV and V, respectively, are charged with ratifying or approving the unlawful conduct of the officers and being, therefore, liable under the Civil Rights Act. Schneider has not moved to dismiss Counts I and II.

### I. Schneider and Miller's Motion to Dismiss Count III

■ Plaintiff alleges in Count III that Officers Schneider and Miller deprived him of liberty without due process in violation of § 1983 by conspiring to bring a false complaint of battery against him and by offering false testimony at a trial on these charges. Defendants contend that neither allegation states a claim under § 1983. This court agrees.

In *Briscoe v. Lahue,* 663 F.2d 713 (7th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982), the Seventh Circuit addressed the question whether police officers can be sued under § 1983 for testifying falsely in criminal proceedings. Although finding important considerations

both favoring and weighing against absolute immunity in a § 1983 suit, the court was persuaded that recent Supreme Court comments on the subject compel the conclusion that police officers, as witnesses, are absolutely immune from § 1983 liability. *Id.* at 720. *Accord, Myers v. Bull,* 599 F.2d 863, 866 (8th Cir.), *cert. denied,* 444 U.S. 901, 100 S.Ct. 213, 62 L.Ed.2d 138 (1979); *Burke v. Miller,* 580 F.2d 108, 109 (4th Cir. 1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979); *Blevins v. Ford,* 572 F.2d 1336, 1338 (9th Cir.1978).

■ Whether § 1983 provides a remedy for the officer's alleged agreement to bring a false complaint of battery presents a more difficult question. To state a claim under § 1983 plaintiff must allege that the defendant, acting under color of law, deprived him of a right secured by the Constitution or laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Schneider and Miller contend that not only is state action lacking but, moreover, that a claim sounding in common law malicious prosecution may not be maintained under § 1983. Additionally, Miller argues that he is only liable as a co-conspirator, and that the allegations of conspiracy are insufficient.

■ As to Miller, we agree that the count should be dismissed. The complaint states that only Officer Schneider signed the false complaint, but holds Miller liable for "agreeing implicitly or explicitly with Schneider to bring [a] false complaint and have it prosecuted." Even assuming that Officer Schneider was acting under color of law, no facts are alleged to establish Miller as a state actor. The mere fact that Miller is employed as a police officer does not make his every act performed under color of law. *U.S. v. McGreevy,* 652 F.2d 849 (9th Cir.1981); *Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980). While it can be asserted that Schneider acted pursuant to state authority because part of the duties of the arresting officer is to file a charge based on that arrest, no such argument can be made

on Miller's behalf. No allegations in the complaint remotely involve Miller as a police officer. His only complicity concerns "agreeing" to the filing of a charge.

A private party, however, may be liable under § 1983, where they have jointly engaged with public officials in the denial of civil rights. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Tarkowski v. Bartlett Realty Co., et al.,* 644 F.2d 1204, 1206 (7th Cir.1980). A conspiracy exists when plaintiff alleges facts sufficient to show that "there was an agreement between the parties to inflict a wrong or injury upon another and an overt act that results in damages." *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Plaintiff's sole attempt to establish a nexus between Miller and Schneider is the allegation that the parties "implicitly or explicitly" agreed to file the charge. Mere allegations that the parties acted in concert, however, without any of the necessary factual averments, is insufficient to defeat a motion to dismiss. *Tarkowski v. Bartlett Realty Co., supra,* at 1206. *McCabe v. City of Chicago,* No. 81 C 5108 (N.D.Ill. 3/2/82). "Plaintiffs must allege with *some particularity* that the public defendant, acting in his official capacity, conspired with the private defendants to deny plaintiffs their rights; vague or conclusory allegations of official participation are not sufficient to withstand a motion to dismiss." *Weiss v. Willow Tree Civic Ass'n.,* 467 F.Supp. 803, 811 (S.D.N.Y.1979) (emphasis added). Accordingly, since the allegations in the complaint are insufficient to support a claim that Miller acted under color of law or conspired with state officials, the motion to dismiss Count III as to Miller is granted. In the event that discovery should provide some particularized basis for a claim against Miller, plaintiff will have ample opportunity to seek his rejoinder as a defendant.

With regard to Schneider, the inquiry becomes more complicated. Both strands of the test for stating a claim under § 1983— state action and deprivation of a federal right—pose close questions not yet addressed in this circuit. Ultimately, we conclude that although Schneider may have been acting under color of law when he signed the complaint, that act did not deprive Koch of a right secured by the Constitution or laws of the United States.

■■■ "[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way 'related to the performance of police duties.'" *Brisco v. LaHue, supra,* at 721 n. 4, quoting *Johnson v. Hackett,* 284 F.Supp. 933, 937 (E.D.Pa.1968). Undoubtedly, private citizens and, indeed, individuals employed as police officers, may sign complaints without there being any indicia of state action. *See Norton v. Liddel, supra,* at 1379 (10th Cir.1980). In the circumstances presented here, however, we believe the complaint sufficiently indicates that Schneider acted in his official capacity. The full performance of an officer's investigative responsibilities includes, either by regulation or custom, a duty to swear out complaints based on that investigation. *Cf. Briscoe v. LaHue, supra,* at 721 n. 4.

■■■ Of course, state action is necessary but not sufficient to satisfy the threshold requirements in a § 1983 suit. The Act "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Thus, the question becomes whether malicious prosecution contravenes the Fourteenth Amendment's guarantee against deprivation of life, liberty or property without due process of law.

■■■ The Seventh Circuit has not directly considered whether malicious prosecution states a claim under the Civil Rights Act, and district courts within the circuit are split. *Compare Brainerd v. Potratz,* 421 F.Supp. 836, 840 (N.D.Ill.1976) (malicious prosecution is not a violation of a constitutional right), *with Spears v. Conlisk,* 440 F.Supp. 490, 498 (N.D.Ill.1977) (false accusation of battery actionable under § 1983).

It can be argued, however, that this Court of Appeals in the past supported, *sub silencio,* the maintenance of § 1983 action based on the tort of malicious prosecution. *See Terket v. Lund,* 623 F.2d 29 (7th Cir. 1980); *Hampton v. Hanrahan, supra,* at 630; *Banish v. Locks,* 414 F.2d 638 (7th Cir.1969).[1] Nonetheless, recent decisions by the Supreme Court and this circuit cast doubt on whether traditional common law torts for which there are obvious and adequate state court remedies are cognizable under the Civil Rights Act. For example, in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that a state actor's mere negligent deprivation of property is not unconstitutional when the victim can be made whole in a post-deprivation state court proceeding. While *Parratt,* by its terms, dealt only with loss of property, the Seventh Circuit, in *Ellis v. Hamilton,* 669 F.2d 510, 515 (1982), seems to have somewhat expanded the scope of that decision. In *Ellis* the court considered the authority of welfare and judicial officers to institute proceedings to remove the plaintiff's grandchildren from her home and allow them to be adopted by strangers. The Court found no violation under § 1983 because state law provided a variety of remedies to correct and promptly remedy any deprivation of liberty that might occur. Together these cases support a notion that in certain circumstances no denial of the due process required by the Fourteenth Amendment occurs if the state provides reasonable and adequate remedies. *Cf. Johnson v. Miller, et al.,* 680 F.2d 39 (7th Cir.1982).

Without deciding the parameters of *Parratt v. Taylor,* and its appropriateness for situations besides deprivations of property,

see *McCowen v. City of Evanston,* 534 F.Supp. 243 (N.D.Ill.1982), we think the concerns expressed there are applicable here. In the case at bar the allegedly malicious prosecution does not implicate liberty interests since there is no indication that plaintiff was kept in jail during trial, and any injury to his reputation that results from the prosecution is not considered a protectable liberty interest. *See Paul v. Davis, supra.* No other "extra factor" such as litigiousness, that may elevate the tort to the level of a constitutional violation, is alleged in the complaint. *See Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187, 1189 (5th Cir.1978). In sum, any injury suffered by plaintiff's facing prosecution is fully compensable in a state court proceeding based on the common law tort. The Fifth Circuit has consistently held, for these reasons, that no cause of action is stated under § 1983 by an allegation of malicious prosecution:

> Neither the Fourteenth Amendment nor the Civil Rights Act purported to secure a person against unfounded or even malicious claims or suits in state courts, especially when the laws and courts of the state are available and furnished adequate remedies to a person aggrieved. *Curry v. Ragan,* 257 F.2d 449, 450 (5th Cir.), *cert. denied,* 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958).

*Accord, Cook v. Houston Post,* 616 F.2d 791 (5th Cir.1980), *Paskaly v. Seale,* 506 F.2d 1209 (9th Cir.1974), *Brainerd v. Potratz, supra.*

In light of the increasing recognition that it may be appropriate to consider "the adequacy and availability (not exhaustion) of remedies under state law before concluding that a deprivation of life, liberty or proper-

---

1. In all three cases, the issue of whether plaintiff's malicious prosecution allegations stated a claim under the Civil Rights Act was not directly posed. Plaintiff relies most heavily on *Hampton v. Hanrahan, supra,* to contend that the Seventh Circuit regards an action for malicious prosecution as stating a claim under § 1983. There the court noted, "An action for malicious prosecution may be brought under § 1983 *if,* acting under color of state law, the defendant has subjected the plaintiff to a depri-

vation of constitutional magnitude." *Id.* at 630 (emphasis added). Such a statement, however, begs the question and the court never actually analyzes whether plaintiff indeed was deprived of a constitutional right. Nevertheless, an argument can be made that the court in *Hampton,* by stating the issue in the manner that it did, and by proceeding to analyze the malicious prosecution claim, implicitly held that the tort infringed a constitutional right.

ty violates due process of law," *Ellis v. Hamilton, supra,* at 515, we believe that were the Seventh Circuit to be faced directly with the question it would concur with the sentiments expressed by the Fifth Circuit. "To hold otherwise would make the Fourteenth Amendment 'a font of tort law to be superimposed upon whatever systems may already be administered by the states.'" *Brainerd v. Potratz, supra,* at 840, *quoting Paul v. Davis, supra,* at 701, 96 S.Ct. at 1160. Accordingly, the common law tort of misuse of legal procedure, without more, does not give rise to the level of a constitutional wrong to be remedied by § 1983, *Beker Phosphate Corp. v. Muirhead, supra,* at 1189, and Count III is therefore dismissed.[2]

## II. *Village's Motion to Dismiss Count V*

Plaintiff alleges in Count V that the Village of Justice approved or ratified the unlawful conduct of Miller and Schneider. The Village moves for dismissal on two grounds:[3] first, that plaintiff fails to set forth with sufficient specificity the existence of a policy or custom as required under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and second, that allegations of a public entity's constructive knowledge of prior instances of unconstitutional conduct are insufficient to give rise to liability.

In *Monell* the Supreme Court held that in certain circumstances municipalities and other governmental units can be sued directly under § 1983 for monetary relief. A municipality, however, "cannot be held liable *solely* because it employs a tort-feasor, or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell, supra,* at 691, 98 S.Ct. at 2036. Rather, a municipality can be sued directly under the Civil Rights laws only when the alleged constitutional viola-

tion stemmed from a "policy statement, ordinance, regulation or decision officially adopted or promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035.

██ In the circumstances presented here, where the existence of a policy must be inferred from the actions of the parties, plaintiff must allege sufficient facts demonstrating that the officer's conduct was part of a pattern of activity amounting to a governmental custom or practice, rather than simply the product of an individual officer's tortious conduct. A single incident, by itself, normally cannot evidence a governmental policy or custom. *Powe v. City of Chicago,* 664 F.2d 639 (7th Cir.1981); *Cattan v. City of New York,* 523 F.Supp. 598 (S.D.N.Y.1981); *Gomez v. City of West Chicago,* 506 F.Supp. 1241, 1245 (N.D.Ill. 1981); *Hamrick v. Lewis,* 515 F.Supp. 983, 985 (N.D.Ill.1980); *Magayanes v. City of Chicago,* 496 F.Supp. 812, 814 (N.D.Ill.1980).

Plaintiff maintains that the complaint meets the requisite standard by the following allegations:

35. The police officers of the [Village] made a constant and repeated practice of physically abusing prisoners....

36. The [Village] knew or should have known of the above stated conduct of the police officers, yet ... with deliberate indifference and gross negligence failed to provide proper training to its police officers, and take disciplinary steps....

37. The [Village] impliedly or tacitly authorized, approved or encouraged the above stated conduct of its officers.

██ There appears to be substantial disagreement in this district with regard to the specificity of pleading required in a suit against a municipality under § 1983. *See Giarrusso v. City of Chicago,* 539 F.Supp.

---

**2.** It should be remembered that plaintiff still has remaining against Schneider a false arrest charge and a pendent state claim for malicious prosecution. *See* discussion on page 854, *infra.*

**3.** Defendants do not dispute that the use of excessive force by a police officer during the course of an arrest constitutes a deprivation of liberty, in violation of the Fourteenth Amendment. *See Starstead v. City of Superior, infra.*

690, 693 (N.D.Ill.1982), *Rivera, et al. v. Farrel, et al.,* 538 F.Supp. 291 (N.D.Ill.1982), and cases cited therein. The various approaches taken by my colleagues "evidence the court's efforts to draw a principled line between the admittedly general standards of federal notice pleading [Rule 8(a)] and the principle that a pleading is insufficient if it merely alleges the conclusions of the pleader without any factual support." *Rivera, et al. v. Farrell, et al., supra,* at 294.

After consideration of the differing viewpoints, this court concurs with the sentiments of Judge Marshall, most recently expressed in *Means v. City of Chicago, et al.,* 535 F.Supp. 455 (N.D.Ill.1982), in which he rejected any distinction between other cases and § 1983 lawsuits with respect to the liberal pleading requirements of Rule 8(a):

> This is not to say that simply reciting that the actions of an individual employee were pursuant to the "policies, customs and usages" of the City is sufficient to state a claim under the statute. The plaintiff must allege what the policy is that is being challenged and demonstrate that it may, under some set of facts, be a proximate cause of the injury in the particular case.... But the test is not whether the plaintiff has pleaded factual instances demonstrating that an unconstitutional policy exists, but rather whether the policy, custom or practice, once pleaded, can be proved. *See Murray v. City of Chicago,* 634 F.2d [365] at 367.... The instant case is instructive as to why the allegations of a particular policy is sufficient without insisting on particularized allegations of underlying facts. Plaintiff alleges in what some might term simply "conclusory" allegations, that the City failed to train adequately the officers in question and police officers generally, failed to supervise and control their actions, and failed adequately to discipline them for past misconduct thereby encouraging the use of excessive force in the future. The complaint details the facts of only the instant incident. *However it clearly contemplates proof of more than this incident in order to prove the alleged policy; it contemplates proof of numerous instances of misconduct upon which the City failed to act....* The law is clear that if plaintiff can establish that "senior supervisory personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the supervisor's inaction amounts to deliberate indifference or to tacit authorization of the offensive act. *Herrara v. Valentine,* 653 F.2d [1220] at 1224.

*Means v. City of Chicago, supra,* at 459–60 (emphasis supplied).

The reasoning of *Means* is in accord with a decision by the Court of Appeals for the Seventh Circuit. In *Murray v. City of Chicago,* 634 F.2d 365 (7th Cir.1980), the Court (while not elaborating in any significant detail) took a liberal approach to construing *Monell* complaints against municipalities. *Starstead v. City of Superior,* 533 F.Supp. 1365, 1372 (W.D.Wisc.1982). The allegations of the complaint in *Murray* parallel those in the case at bar: plaintiff alleged past acquiescence in prior misconduct as the basis for the existence of a city policy, but provided no facts concerning the alleged past incidents. The district court dismissed the action against the city. In reversing, the Court of Appeals held that

> As to the City, it is possible that existence of a policy, custom or practice might be established. If plaintiff succeeds in proving her allegations that similar unwarranted arrests have occurred frequently, to the knowledge of the parties involved, it might be possible to show dereliction of duty of constitutional dimension upon the part of the responsible officials.

634 F.2d at 367.

Thus, *Murray* suggests that a complaint is sufficient under § 1983 if the plaintiff pleads "the skeletal outlines of a viable theory of municipal culpability." *Spriggs v. City of Chicago,* 523 F.Supp. 138, 145 (N.D. Ill.1981).

Under the standards set forth in *Murray* and *Means,* the allegations made by Mr. Koch state a claim under *Monell* against the Village of Justice.

### III. *Rafelli's Motion to Dismiss Count IV*

■ In Count IV plaintiff alleges that Rafelli, directly or indirectly, ratified or approved the unlawful conduct of Schneider and Miller. In order to state a claim against supervisory personnel under' § 1983 there must be alleged an affirmative link between the supervisory personnel's acts or omissions and the actions causing the alleged constitutional violations so that the supervisor can be said to have encouraged, approved of or acquiesced in the complained-of conduct. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Such an affirmative link requires more than an allegation of mere negligent supervision over those whom a person has authority and control. *Stringer v. City of Chicago,* 464 F.Supp. 887, 891 (N.D.Ill.1979). Rather, plaintiff must allege that the supervisor was personally involved in the deprivation. *Adams v. Pate,* 445 F.2d 105 (7th Cir.1971).

■ In attempting to meet this standard plaintiff charges that Rafelli knew or should have known that police officers under his command or supervision engaged in police misconduct and, moreover, that Rafelli recklessly and consciously failed to provide proper training and supervision of the officers under his command.

While these allegations are not models of specificity, they are sufficient to withstand a motion to dismiss. *See McClelland v. Facteau,* 610 F.2d 693, 696 (10th Cir.1979). They apprise defendant of the facts and circumstances of his liability, indicating that the supervisor was personally responsible for instituting the policies in question, had knowledge of the inadequacies of training and supervision, and yet failed to act. Such acts and omissions allegedly caused the beating and false arrest of the plaintiff. Since these facts are all that is required to be pled at this stage of the litigation, *see Means v. City of Chicago, supra,* the motion to dismiss Count IV is denied.

Although Counts I and II were not specifically made the focus of any motion, this court feels compelled to make several comments concerning the allegations therein. The exact basis for Count I is unclear. To the extent that plaintiff alleges a violation of § 1983 by virtue of malicious prosecution and false testimony, Count I does not differ substantively from Count III and hence no claim is stated. Alternatively, if plaintiff is attempting to proceed directly under the Fourteenth Amendment he again fails to state a claim. *See also Stringer v. City of Chicago, supra; Turpin v. Mailet,* 591 F.2d 426, 427 (2d Cir.1979), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). We instead construe the count to be a pendent state law claim for malicious prosecution and false arrest, with federal jurisdiction based upon a § 1983 claim for the latter tort.

■ As defendants note, however, the termination of a prior proceeding in favor of the plaintiff is an essential element in a malicious prosecution claim and must be factually alleged in the complaint. *La-Salle National Bank v. 222 E. Chestnut Street Corp.,* 267 F.2d 247 (7th Cir.), *cert. denied,* 361 U.S. 836, 80 S.Ct. 88, 4 L.Ed.2d 778 (1959), *Freides v. Sani-Mode Manufacturing Co.,* 33 Ill.2d 291, 295, 211 N.E.2d 286 (1965). The complaint lacks any allegations in this regard although plaintiff states in his brief that there has been a termination of a judicial proceeding in his favor. This, however, does not cure the fatal defect in the pleadings since the sufficiency of a complaint must be judged solely by the facts alleged therein. *Gonzalez, et al. v. McCabe, et al.,* No. 79 C 3130, slip opinion at 5 (N.D.Ill. June 12, 1981). Therefore, the malicious prosecution claim will be dismissed in 30 days unless plaintiff amends to allege a claim.

Properly amended, Count I states a state law claim for malicious prosecution, and this court chooses to exercise its discretion to hear the state law claim as pendent to the federal claims. *See United Mine Work-*

*ers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *McCabe v. City of Chicago, et al.,* No. 81 C 5108 (N.D.Ill. 3/2/82).