David **FARLOW**, Jack R. **Frymire**, David **Frymire**, Richard A. **Frymire**, Kathleen **Frymire-Brinati**, Harvey **Jaunich**, David **Fisher**, and K & D **Partnership**, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**PEAT MARWICK MITCHELL & CO.;** Westinghouse Credit Corporation; and Marsha Powers, Defendants.

No. CIV 86–0487–P.

United States District Court, W.D. Oklahoma.

July 20, 1987.

Stuart Weltman, Chicago, Ill., and Ronald E. Stakem, Oklahoma City, Okl., for plaintiffs.

William Conger, Oklahoma City, Okl., for defendant Peat Marwick Mitchell.

William L. Peterson, Oklahoma City, Okl., for defendant Westinghouse Credit.

James S. Matthews, Jr., Oklahoma City, Okl., for defendant Phillip Kidd, III.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

PHILLIPS, District Judge.

### I. BACKGROUND

This matter comes before the Court upon defendants Peat Marwick Mitchell and Westinghouse's Motions to Dismiss plaintiffs' Second Amended Complaint against them pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. Portions of plaintiffs' original Complaint and Amended Complaint were dismissed without prejudice with leave to amend by the previous judge assigned to this matter due primarily to plaintiffs' failure to plead their fraud claims with particularity under Rule 9(b), Fed.R.Civ.P. *See Order*, CIV–86–487–R (W.D.Okla. December 10, 1986). For the reasons hereinafter set forth, the motions to dismiss plaintiffs' Second Amended Complaint are GRANTED in part and DENIED in part.

Plaintiffs bring this action pursuant to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18, U.S.C. § 1961 *et seq;* § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2); § 17(a) of that Act, 15 U.S.C. § 77q(a); § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b) and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. 240.10b–5; 71 O.S. § 408; and common law fraud.

■ When a motion to dismiss is before the Court, under Rule 12(b)(6), the factual allegations of the complaint must be taken as true and all reasonable inferences from them must be indulged in favor of the complainant. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Further, the complaint should not be dismissed merely because plaintiffs' allegations do not support a stated legal theory, for the Court is obligated to determine whether the allegations support relief on any possible theory. *See Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir.1980).

Plaintiffs allege that sometime prior to 1980, Patrick E. Powers, Jr. ("Powers"), who is not a named defendant herein, devised a "ponzi" type scheme to fraudulently obtain funds for himself and others through the sale of limited partnerships, notes, commercial paper and other forms of indebtedness alleged to be securities. Powers, Pepco, Inc., and the related entities are alleged to have accomplished their fraudulent scheme by misrepresenting that funds invested in the limited partnerships would be used to purchase real estate and to preserve and increase the investors' capital investment (¶¶ 22–24),[1] when in reality these investment properties were financially unsound. (¶¶ 25–28). According to the Second Amended Complaint, the scheme also involved the forming of Pepco as a clearinghouse for Powers' commingling and misuse of investor funds (¶ 34); loaning, without documentation, the investors' capital contributions to Pepco in return for worthless unsecured promissory notes (¶ 34) and using said capital contributions to support the failing properties and embezzle or waste the difference (¶¶ 35–38); nondisclosure and misrepresentation of the risks associated with this investment scheme (¶¶ 39–41) and failure to file Certificates of Limited Partnership with the Secretary of State of Oklahoma thereby exposing investors to greater liability.

---

1. References to paragraphs are to the Second Amended Complaint, filed January 12, 1987.

Defendant Peat Marwick is alleged to have certified without qualification the following financial statements of Pepco: (1) interim statement as of April 30, 1981 (issued May 8, 1981); (2) statement for year ending December 31, 1981; (3) statement for year ending December 31, 1982; (4) statement for year ending December 31, 1983; and (5) statement for Pepco Development, Inc., for year ending December 31, 1981. Plaintiff alleges further that Peat Marwick knew at the time it certified these financial statements that Powers was orchestrating the above referenced fraudulent scheme and the complaint itemizes the facts which Peat Marwick allegedly knew when it certified the stated financial statements (¶¶ 46–47 and 50–56). However, plaintiff only alleges specific items which were undisclosed in the December 31, 1982, and December 31, 1983, financial statements of Pepco certified by Peat Marwick.

In an effort to comply with Judge Russell's Order of December 10, 1986, dismissing with leave to amend plaintiffs' complaint for failure to comply with Rule 9(b), Fed.R.Civ.P., plaintiffs next attempt to allege direct "misrepresentations" and omissions made by Peat Marwick to the named plaintiffs and class members. (¶ 57–61). Of these allegations, the only specific occasion where a financial statement certified by Peat Marwick is alleged to have been included in an offering memorandum was the Southroads Mall Village, Ltd., offering with the December 31, 1981 financial statement for which no *specific* allegations of impropriety have been made. However, plaintiff alleges inclusion of financial statements in "some of the offering memoranda" sent to investors while others were hand delivered by Powers. (¶¶ 76–77). Plaintiffs claim that had the investors known the financial statements delivered to them with Peat Marwick's knowledge and consent were false, they would not have purchased their units. (¶¶ 78–81).

In a further attempt to comply with Judge Russell's Order of particularity under Rule 9(b), plaintiffs list some specific purchases of named plaintiffs. (¶¶ 82–93). These generally contain the plaintiff's name, the amount he or she invested, what he or she invested in, and that the plaintiff "received personally from Powers or through the mails," the particular offering memorandum and "the then-most-recent PMM certified Pepco financial statement." *Id.* Each and every one of these paragraphs ends with the allegation: "In making his (her) purchase, (plaintiff) relied upon the representations contained in the offering memorandum and financial statement."

Defendant Westinghouse is alleged to have extended credit in excess of $10,000,-000.00 to Powers and Pepco in the Fall of 1982, knowing Powers and Pepco were currently violating securities laws. (¶¶ 62–63). In addition, Westinghouse is alleged to have "aided Powers' cover-up of prior frauds by keeping the true financial picture of Pepco operations from the then-current investors." (¶ 66). Plaintiffs' allegations as to Westinghouse's *knowledge* of Powers' scheme are sufficiently pled for Rule 9(b) purposes. However, as detailed below, this does not end this Court's inquiry.

## II. PLAINTIFFS' SECTION 12(2) CLAIMS (COUNT IV)

Section 12(2) of the Securities Act imposes liability on "any person who offers or sells a security" by means of a prospectus or oral communication "which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements not misleading." As stated in Judge Russell's December 10, 1986 Order, the Tenth Circuit has not defined "seller" for Section 12(2) purposes. This district has, however, previously adopted the definition of "seller" under Section 12(2) formulated by the Fifth Circuit. *Resler v. Financial Group, Inc.,* 668 F.Supp. 1454 (W.D.Okla. 1985); *Croes v. Rotan Mosle, Inc.,* Civ–82–1247–W (W.D. Okla. Feb. 14, 1983). According to this definition, a person may be considered a seller under Section 12(2) if (1) he is in privity with the purchaser or (2) his participation in the buy-sell transaction is a substantial factor in causing the transaction to take place. *Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.1980).

■ The "substantial factor" test relates exclusively to primary liability under Section 12(2). Rather than an adoption of secondary liability under Section 12(2), the "substantial factor" test is simply an expansion of the term "seller." Initially, it is not entirely clear to this Court from plaintiffs' Complaint and briefs whether they are alleging primary liability under Section 12(2) (substantial factor) or secondary liability (aiding and abetting or conspiracy). In its earlier Order of dismissal, Judge Russell noted that plaintiffs were claiming they had not alleged a primary violation of Section 12(2) but rather that Peat Marwick was liable as an aider, abettor or co-conspirator. Order of December 10, 1986 at 10. Plaintiffs once again allege they have stated a claim against Peat Marwick for its conspiracy with, or aiding and abetting of, Powers' primary securities violations and mail fraud. However, they also allege Peat Marwick was a substantial factor in the subject sales, which is a concept of primary liability. (¶ 97). For these reasons, the Court will analyze plaintiffs' Section 12(2) claims under both primary and secondary theories of liability.

Plaintiffs make no allegation that Peat Marwick was a direct seller in privity with plaintiffs, thus, plaintiffs' Section 12(2) claim of primary liability must stand or fall on the substantial factor test of *Pharo v. Smith.*

In ¶ 97 of Count IV of the Second Amended Complaint (Section 12(2) claims), the following allegation is telling in this analysis:

PMM was a *substantial factor* in the sale of these securities to class members because, *but for* the fact that PMM certified Pepco's financial statements without qualification, these class members would not have purchased the limited partnership interests. *If PMM had properly disclaimed, qualified, or footnoted* the financial statements, these facts would not have remained hidden from potential investors; with such knowledge reasonably prudent investors would not have purchased the limited partnership units; and Powers and Pepco would not have

been able to continue to operate. [emphasis added.]

■ As pointed out more fully in the Court's analysis of plaintiffs' Section 10(b) claims, the above language is indicative of the most remote connection with the sale of the limited partnerships. Proximate cause allegations of Section 12(2) liability are insufficient. *See Davis v. Arco Financial Services, Inc.,* 739 F.2d 1057, 1065–67 (6th Cir.1984). Plaintiffs must do more than allege Peat Marwick was a substantial factor in causing the sale; plaintiffs must also allege facts which tend to show Peat Marwick's *participation in the buy-sell transaction* in order to satisfy the substantial factor test of *Pharo* for imposition of primary liability under Section 12(2). Plaintiffs have wholly failed in this regard. *See Hill York Corporation v. American International Franchises, Inc.,* 448 F.2d 680, 693 (5th Cir.1971).

■ Plaintiffs also seem to allege Peat Marwick violated Section 12(2) by either aiding and abetting or conspiring with Powers, thus incurring secondary liability. The Tenth Circuit has not ruled on whether this type of liability is appropriate under Section 12(2). Moreover, plaintiffs have not cited, nor has the Court found, any cases importing the Section 10(b) theories of secondary liability into Section 12(2) cases under such tenuous allegations. This Court declines to adopt aider and abettor or conspiracy liability for Section 12(2) in light of its previous adoption of the substantial factor expansion of "seller" for primary liability.

Plaintiffs have not alleged Peat Marwick was an issuer, director, signatory of a prospectus, offeror or seller of the limited partnerships. Nor have plaintiffs sufficiently alleged Peat Marwick's role as a substantial factor in bringing about the sales through its participation in the buy-sell transaction. For these reasons, Peat Marwick's Motion to Dismiss plaintiffs' Section 12(2) claims against it is hereby GRANTED with prejudice.

## III. PLAINTIFFS' SECTION 10(b) CLAIMS (COUNT II)

Plaintiffs allege both Peat Marwick and Westinghouse violated Section 10(b). Plaintiffs allege the primary liability and secondary liability of Peat Marwick and only secondary liability of Westinghouse. (¶¶ 95–101).

Section 10(b) forbids the use of "any manipulative or deceptive device or contrivance." Rule 10b–5 makes it unlawful, in connection with the purchase or sale of a security:

(1) to employ any device, scheme or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

In order for a plaintiff to prevail against a primary violator of Section 10(b) and Rule 10b–5, it must show the following:

1. That the conduct complained of occurred in connection with the purchase or sale of a security.

2. That the violator made an untrue statement of a material fact, or failed to state a material fact which was necessary in order to make the statements which were made not misleading.

3. That the violator acted knowingly, with a motive embracing intent to deceive, manipulate, or defraud; or with recklessness such as would be considered an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the actor or so obvious that he must have been aware of it.

4. That plaintiff relied on such misrepresentation, and

5. That the plaintiff was damaged as a proximate result of such misrepresentation.

*Feldman v. Pioneer Petroleum, Inc.*, 606 F.Supp. 916 (W.D.Okla.1985) citing *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir.1975); *Stevens v. Vowell*, 343 F.2d 374 (10th Cir.1965).

██ Liability may also be established secondarily upon a showing defendants aided and abetted the primary violator. To establish aider and abettor liability, the plaintiffs must show:

1. Fraud by the primary violator;

2. Knowledge of the fraud by the aider and abettor; and

3. Substantial assistance by the aider and abettor.

*Feldman, supra,* citing *Hackbart v. Holmes*, 675 F.2d 1114 (10th Cir.1982) (additional citations omitted).

Initially, plaintiffs have pled no facts or circumstances which would indicate Peat Marwick's primary liability under the "in connection with the sale" requirement of Section 10(b) and Rule 10b–5. Plaintiffs allege that "PMM is primarily liable under Section 10(b) and Rule 10b–5 of the 1934 Act because it knowingly made material misrepresentations and omissions directly to purchasers of the limited partnership units." (¶ 98). While all factual allegations of the complaint must be taken as true and all doubt resolved in favor of the complainant, *Mitchell, supra,* this Court is not required to blindly accept conclusory allegations tracking the requisite statutory language. *See Ryan v. Scoggin*, 245 F.2d 54 (10th Cir.1957). Rather, the Court will look to the substance of the allegations in the complaint and whether or not they are supported by the necessary factual allegations.

In the instant complaint, the substance of the Section 10(b) allegations is that Peat Marwick *omitted* and *failed to disclose* the fraudulent activity of Powers in certifying the various financial statements of Pepco *without qualification.* Plaintiffs' allegations of direct misrepresentations are supported only by factual allegations indicating a failure to disclose. Plaintiffs do not allege direct contact with Peat Marwick, touting of the "securities," or any other facts which would establish Peat Marwick

acted "in connection with" the sale of the limited partnerships. Consequently, the Court must next determine whether plaintiffs have sufficiently alleged a secondary violation of Section 10b-5 by Peat Marwick.

■ A plaintiff's case against an aider, abettor or conspirator may not rest on a conclusory allegation that defendant had knowledge of the fraudulent activity of the primary violator. The plaintiff must support these allegations with "some reason to conclude that the defendant has thrown in his lot with the primary violators." *Barker v. Henderson*, 797 F.2d 490 (7th Cir. 1986). Moreover, "secondary liability does not sweep up all people who can be characterized as participants in or contributors to the success of the firm that issues the securities." *Id.* As previously stated, the substance of plaintiffs' Section 10(b) allegations against Peat Marwick is that Peat Marwick simply failed to disclose what it knew to be the fraudulent activity of Powers, to the detriment of plaintiffs.

The Tenth Circuit has clearly set the parameters for liability in securities cases dealing with "omissions" in *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Insurance Corporation, et al.*, 805 F.2d 342 (10th Cir.1986) as follows:

> The failure to disclose material information is actionable only "when [one] is under a duty to do so. And the duty to disclose arises when one party has information that the other party is entitled to know *because of* a fiduciary or other similar relation of trust and confidence between them." *Chiarella v. United States*, 445 U.S. 222, 228 [100 S.Ct. 1108, 1114, 63 L.Ed.2d 348] (1980) (citation omitted). A duty arises from the relationship between the parties not merely because one party has an ability to acquire information. *Id.* at 231, n. 14 [100 S.Ct. at 1116 n. 14]. Without a duty to disclose silence cannot be made fraudulent. [original emphasis]

*See also Dirks v. S.E.C.*, 463 U.S. 646, 653-54, 103 S.Ct. 3255, 3260-61, 77 L.Ed.2d 911 (1983); *Barker v. Henderson* at 495; *D & G Enterprises v. Continental Illinois National Bank*, 574 F.Supp. 263 (N.D.Ill.

1983). The *Barker* Court, citing *Dirks* and *Chiarella*, observed as follows:

> When the nature of the offense is a failure to "blow the whistle," the defendant must have a *duty* to blow the whistle. And this duty does not come from § 10(b) or Rule 10b-5; if it did, the inquiry would be circular. The duty must come from a fiduciary relation outside securities law. [*Id.* at 496.] [citations omitted]

■ In the instant complaint, plaintiffs have failed to allege any *facts* which would indicate anything other than an allegation of knowingly failing to disclose. Noticeably absent from the complaint are factual allegations that Peat Marwick gained, other than by receipt of standard fees for accounting services, by bilking the buyers of the securities. *Cf. Dirks, supra* 463 U.S. at 662-64, 103 S.Ct. at 3265-66. Nor are there allegations that Peat Marwick received proceeds from the sales, received fees for rendering advice in connection with the sales, or reviewed or approved any of the materials used to sell the partnerships, other than the financial statements it certified. Indeed, as pointed out by Peat Marwick, plaintiffs have cited only one offering memorandum that contained a Peat Marwick audit report on any Pepco financial statement. That particular memorandum, Southroads Mall Village, contained only Peat Marwick's audit report on the December 31, 1981, Pepco financial statement, of which no substantive allegations of falsehood are made.

Conclusory pleading of securities fraud resulting in tenuous connections at best between the purchasers and alleged violators, whether primary or secondary, simply does not comply with Rule 9(b), Fed.R. Civ.P. Plaintiffs in the instant case were instructed by Judge Russell's December 10, 1986 Order that its allegations as to primary liability and secondary liability would be scrutinized by the test for particularity in securities fraud cases announced in *Seattle-First National Bank v. Carlstedt*, 800 F.2d 1008, 1010 (10th Cir.1986). Plaintiffs have not met these requirements.

The extent to which lawyers and accountants should reveal their clients' wrongdoing—and to whom they should reveal—is a question of great moment. There are proposals to change the rules of legal ethics and the SEC's regulations governing accountants. The professions and the regulatory agencies will debate questions raised by cases such as this one for years to come. We express no opinion on whether these firms did what they should, whether there was malpractice under state law, or whether the rules of ethics (or other fiduciary doctrines) ought to require lawyers and accountants to blow the whistle in equivalent circumstances. We are satisfied, however, that an award of damages under the securities laws is not the way to blaze the trail toward improved ethical standards in the legal and accounting professions. Liability depends on an *existing* duty to disclose. The securities law therefore must lag behind changes in ethical and fiduciary standards. The plaintiffs have not pointed to any rule imposing on either firm a duty to blow the whistle. [*Barker* at 497.]

The question before the Court is not whether Peat Marwick's alleged conduct of knowingly certifying and approving financial statements it knew to be false, and thereby furthering Powers' fraudulent scheme, is generally actionable. If such activity occurred, the Court does not in any way condone such conduct, and is confident there is a host of civil and criminal remedies available to a variety of private and governmental litigants. This Court's Order provides neither a shield to accountants for such alleged conduct nor a bar to such action by proper plaintiffs who can adequately plead their case. Rather, the narrow issue before this Court is whether Peat Marwick's alleged conduct is actionable under the federal securities laws under the allegations of *this* Complaint, in light of plaintiffs' repeated failure to sufficiently plead their case as directed by Judge Russell's previous Order. After careful consideration, the Court is convinced plaintiffs' claims are fatally defective. Accordingly, Peat Marwick's Motion to Dismiss Plaintiffs' Section 10b and Rule 10b–5 claims is hereby GRANTED with prejudice.

■ Plaintiffs also allege defendant Westinghouse is secondarily liable under Section 10(b) and Rule 10b–5 of the 1934 Act "because it either agreed to conspire with Powers or substantially aided him in the fraud. (¶ 101). Plaintiffs claim Westinghouse, knowingly and with documentation of Powers' fraudulent scheme, financed the operation allowing the scheme to continue and benefitted financially, independent of routine fees for services, therefrom. Although the allegations against Westinghouse are not well pled, this Court cannot say that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson, supra.* Nor can the Court say, without doubt, that plaintiffs have not pled their Section 10(b) claims against Westinghouse with the requisite particularity.[2] For clarity purposes, the Court feels the need to articulate some of the reasons for retaining Westinghouse as a defendant at this stage of the proceeding while dismissing Peat Marwick. Westinghouse is generally alleged to have loaned a substantial sum of money to Powers, with documentation of Powers' fraudulent scheme in hand, for the purpose of allowing the scheme to continue. In addition, Westinghouse is alleged to have structured the lending arrangement so as to insulate itself from the risk and have plaintiffs bear the brunt of that risk. Unlike Peat Marwick, Westinghouse is generally alleged as being a partner in the profits of the scheme rather than simply receiving a standard fee for services. As a result, the Court finds that plaintiffs have alleged facts sufficient to establish the link between Westinghouse and the scheme. Accordingly, Westinghouse's Mo-

---

**2.** Plaintiffs are cautioned, however, that they will have to produce evidence, after the necessary factual discovery, establishing each of the *Feldman* elements, *supra,* for proving a claim for secondary liability in Section 10(b) cases in order to survive a Motion for Summary Judgment. Conclusory allegations unsupported by direct evidence of "substantial assistance" will not suffice.

**1508**

tion to Dismiss the Section 10(b) claims against it is hereby DENIED.[3]

### IV.  PLAINTIFFS' SECTION 17(a) CLAIMS (COUNT III)

In his December 10, 1986 Order, Judge Russell declined to imply a private cause of action and dismissed plaintiffs' Section 17(a) claims.  Plaintiffs reallege these claims and request this Court to reconsider that ruling in light of *Richey v. Westinghouse Credit Corporation,* 667 F.Supp. 752 (W.D.Okla.1986).

*Richey* points out that the United States Supreme Court has declined to determine whether a private right of action exists under Section § 17(a).  *Teamsters v. Daniel,* 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979).  The courts appear to be split on this issue.  The *Richey* Court noted that, based on *Herman and MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), and *Geller v. Prudential-Bache Securities,* 591 F.Supp. 27 (W.D.Okla.1983), the district courts in Oklahoma seem to have departed from the view of *Freeman v. McCormick,* 490 F.Supp. 767 (W.D.Okla.1980) to allow a private cause of action under Section 17(a). *See Westland Energy, 1981–1, Limited v. Bank of Commerce,* 603 F.Supp. 698 (N.D. Okla.1984).  However, as shown below, this Court need not, and should not, reach the decision of whether a private cause of action exists under § 17(a).

Assuming, *arguendo,* a private action exists under Section 17(a), the next question is what standard of liability applies and to whom it applies.  Section 17(a) reads as follows:

(a) It shall be unlawful for any person *in the offer or sale* of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.  [emphasis added].

Like Section 12(2) and unlike Section 10(b), Section 17(a) prohibits certain activity "in the offer or sale" of securities.  This language would seem to limit the applicability of the section to "sellers."  *See Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 687, 100 S.Ct. 1945, 1950–51, 64 L.Ed.2d 611 (1980); *Securities and Exchange Commission v. First Financial Group,* 645 F.2d 429, 436 n. 12 (5th Cir.1981).

■ Plaintiffs allege Peat Marwick is both primarily and secondarily liable under Section 17(a).  (¶¶ 100 & 103).  Westinghouse's liability is premised only upon secondary liability (aiding and abetting). (¶ 105).  This Court also finds it unnecessary to determine whether the expanded definition of "seller" (substantial factor test) would be applicable to an action under Section 17(a).  However, for the same reasons the Court declined to adopt the theory of secondary (aiding and abetting or conspiracy) liability in Section 12(2) claims, the claims for secondary liability against both Peat Marwick and Westinghouse under Section 17(a) must be dismissed regardless of whether a private cause of action should lie for Section 17(a).  Likewise, as to primary liability, plaintiffs have failed to allege sufficient facts with which to show Peat Marwick was a "seller" or a substantial factor, assuming this expansive test were proper under Section 17(a).  *See*

---

**3.** Judge Russell previously addressed a number of issues relating to statutes of limitation.  *See* Order of December 10, 1986, *supra.*  The Court reserves ruling on these questions and will ad-

dress them when and if plaintiffs properly develop proof of their conspiracy claims of secondary liability against Westinghouse.

*PLAINTIFFS' SECTION 12(2) CLAIMS, supra.* For these reasons, both Peat Marwick's and Westinghouse's Motions to Dismiss Plaintiffs' Section 17(a) claims against them are hereby GRANTED with prejudice.

## V. PLAINTIFFS' RICO CLAIMS (COUNT I)

Plaintiffs allege Peat Marwick is liable under 18 U.S.C. § 1962(d) in that it conspired with Powers to violate 18 U.S.C. § 1962(a) and (c), and that "PMM is also liable in that it aided and abetted Powers in his violations of 18 U.S.C. §§ 1962(a) and (c)." Supplemental RICO Case Statement, Response to No. 2. Westinghouse is alleged to have violated these same provisions. The alleged underlying predicate acts are securities fraud and mail fraud. *Id.* at Response to No. 5(a).

Defendants respond that plaintiffs have wholly failed to comply with the Court's directives of December 10, 1986, requiring the details of the alleged RICO violations be pled with particularity. The Court agrees. In addition, defendants contend that plaintiffs have failed to state a claim for the necessary predicate acts. These contentions will be separately addressed.

In relevant part, Section 1962(a) provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt ... to use or invest, directly or indirectly, any part of such income in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.... [18 U.S.C. § 1962(a)].

Section 1962(c) provides as follows:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering or collection of unlawful debt. [18 U.S.C. § 1962(c)].

Section 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

As to Peat Marwick, plaintiffs have wholly failed to allege any violation of RICO with the particularity required by Rule 9(b). Plaintiffs allege mail fraud as one of the predicate acts to establish the pattern requirement yet fail to specifically plead the mail fraud violations. In particular, plaintiffs allege:

100. In furtherance of the scheme, the co-conspirators frequently used the mails, making their actions indictable under federal mail fraud statutes (18 U.S.C. §§ 1341). For example, on many occasions during the period January 1979 to 1985, Powers mailed to class members false and misleading offering memoranda, financial statements, and investor newsletters. Without discovery, plaintiffs cannot determine the exact dates of each of these mailings. [¶ 100].

The Second Circuit has pointed out that "[a] complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one." *In re Tesoro Petroleum,* 467 F.Supp 227 (W.D. Tex.1979), citing *Segal v. Gordon,* 467 F.2d 602, 607–08 (2d Cir.1972). The *Tesoro* court further stated that a plaintiff in a non–9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it. *Id.* at 250.[4] Finally, defendants

---

4. On July 15, 1987, in apparent recognition of the deficiencies of their claims against Peat Marwick, plaintiffs filed a two-page document entitled "Motion for Leave to File Amendment to Second Amended Complaint." Although the proposed amendment was not attached to the motion, which counsel for plaintiffs at oral argument on July 17, 1987, characterized as an oversight, the conclusory allegations offered in the two-page document filed on the eve of this Court's Dismissal Order do not alter the Court's view of the matter. Moreover, granting plain-

such as Peat Marwick and Westinghouse are in fields of expertise which are especially sensitive to claims of fraud. Moreover, RICO is not an ordinary fraud statute in that its violators, by its very nature, are labelled, *inter alia*, "racketeers" and "organized criminals." *See Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1306 n. 5 (D.Colo.1984).

The above factors are particularly relevant when liability is premised on Section 1962(d) (conspiracy) because the link between a 1962(d) defendant and the acts of racketeering is of necessity more tenuous than the link between the racketeering activity and the primary violator. Mere conclusory allegations that the parties acted in concert, without any of the necessary factual averments, are insufficient to defeat a motion to dismiss. *Tarkowski v. Bartlett Realty Company*, 644 F.2d 1204, 1206 (7th Cir.1980). *See also Papai v. Cremosnik*, 635 F.Supp. 1402 (N.D.Ill.1986); *Koch v. Schneider*, 550 F.Supp. 846 (N.D.Ill.1982); *Weiss v. Willow Tree Civic Association*, 467 F.Supp. 803, 811 (S.D.N.Y.1979).

In addition to plaintiffs' failure to comply with Rule 9(b) as to mail fraud, plaintiffs have similarly failed on the securities law violations which are also alleged as predicate RICO acts. As previously stated, the securities violations alleged against Peat Marwick have been dismissed and thus cannot be used for RICO purposes.

However, the question arises as to whether plaintiffs' Section 10(b) claims against Westinghouse may be applied to its RICO claims. The Court finds it unnecessary to determine whether aiding and abetting of or conspiracy to violate securities laws will serve as a predicate act for a RICO violation. In light of this Court's analysis of plaintiffs' duty to plead with particularity its RICO claims and plaintiffs' complete and total failure to do so, both Peat Marwick's and Westinghouse's Motions to Dismiss the RICO claims against

them are hereby GRANTED with prejudice.

## VI. PLAINTIFFS' SECTION 408(a)(2) CLAIMS (COUNT IV)

Since the Court has dismissed the federal securities claims against Peat Marwick because plaintiffs have failed to state a federal claim, and pursuant to the Court's discretion, plaintiffs' Section 408 claims against Peat Marwick should be and are hereby DISMISSED. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The only contention Westinghouse makes in support of its motion to dismiss plaintiffs' Section 408 claims against it is based on its response to the federal claims. Westinghouse does not directly challenge the Section 408 claim in its briefs but claims both pendent claims should be dismissed. The Court, in the exercise of its discretion, *United Mine Workers, supra*, and because plaintiffs' Section 10(b) and Rule 10b–5 claims against Westinghouse have survived, declines to dismiss the Section 408 claim. Accordingly, Westinghouse's Motion to Dismiss Plaintiffs' Section 408 Claim against it should be and is hereby DENIED.

## VII. PLAINTIFFS' COMMON LAW FRAUD CLAIMS (COUNT VI)

For the same reasons plaintiffs' Section 408 claims against Peat Marwick have been dismissed, and the fact that no duty to disclose has been pled, plaintiffs' common law fraud claims against Peat Marwick should be and are hereby DISMISSED. In addition, for the same reasons plaintiffs' Section 408 claims against Westinghouse were retained, Westinghouse's Motion to Dismiss plaintiffs' common law fraud claim against Westinghouse is hereby DENIED.

## VIII. CONCLUSION

Accordingly, it is hereby ORDERED that defendant Peat Marwick's Motion to Dis-

---

tiffs leave to amend for a fourth draft of its complaint on the eve of this Court's Dismissal Order in a case spanning sixteen months thus far would be neither consistent with the man-

date of *Tesoro* nor in the interests of justice. Accordingly, leave to amend is DENIED. *See* Rules 15(a) and (d), Fed.R.Civ.P.

miss plaintiffs' First, Second, Third and Fourth Causes of Action is HEREBY GRANTED with prejudice for the reason plaintiffs have unsuccessfully pled their causes of action on three separate occasions and have failed to comply with the previous directives of this and the previous Court.

It is FURTHER ORDERED that defendant Peat Marwick's Motion to Dismiss plaintiffs' Fifth and Sixth Causes of Action is hereby GRANTED without prejudice for properly pleading, if possible, and filing in state court.

It is FURTHER ORDERED that defendant Westinghouse's Motion to Dismiss plaintiffs' First and Third Causes of Action is hereby GRANTED with prejudice.[5]

It is FURTHER ORDERED that defendant Westinghouse's Motion to Dismiss plaintiffs' Second, Fifth and Sixth Causes of Action is hereby DENIED.

It is FURTHER ORDERED that plaintiffs' Motion for Leave to File Amendment to the Second Amended Complaint is hereby DENIED.

---

5. Although Westinghouse was not an original defendant in this case, plaintiffs' § 17(a) and RICO claims are remarkably similar to those against Peat Marwick. Plaintiffs have had ample direction from the Court and opportunity to properly plead these claims, if they could, but have completely failed to do so. For these reasons, the § 17(a) and RICO claims against Westinghouse are also dismissed with prejudice.