James THORNBURG, Plaintiff,

v.

Michael DORA d/b/a Indiana Columbus Developers, John Doe, Night Manager, Old Columbus Holiday Inn, City of Columbus, Indiana, and Officer Gary W. Coon; Bartholomew County Sheriff; Board of Commissioners of Bartholomew County and Deputy Ronald Hoskins, Defendants.

No. IP 86–1354–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 21, 1988.

Byron C. Wells, Byron C. Wells and Associates, Shelbyville, Ind., for plaintiff.

Richard M. Knoth, Indianapolis, Ind., for defendants Michael Dora d/b/a Indiana Columbus Developers, John Doe Night Manager, Old Columbus Holiday Inn.

Joan F. Irick, Kightlinger & Gray, Indianapolis, Ind., for defendants City of Columbus, Indiana.

Stephenson and Kurnik, Indianapolis, Ind., Joseph S. Thompson, Columbus, Ind., for defendants Officer Gary W. Coon, Bartholomew County Sheriff, Bd. of Com'rs of Bartholomew County, and Deputy Ronald Hoskins.

BARKER, District Judge.

ENTRY

This matter is before the court on two motions for summary judgment. The Bartholomew County (hereinafter "County") defendants and the City of Columbus (hereinafter "City") defendants initially filed motions to dismiss. On September 4, 1987, by order of this court, both motions were converted, according to the dictates of Fed. R.Civ.P. 12(b), to motions for summary judgment, pursuant to Fed.R.Civ.P. 56(c).

*Procedural Background*

The plaintiff James Thornburg filed his second amended complaint on April 27, 1987. In it he alleges that each of the eight defendants, acting under color of state law, conspired with each other to deprive him of his constitutional rights under the fourth and fourteenth amendments to the United States Constitution and in violation of 42 U.S.C. § 1983. Defendants Michael Dora d/b/a Indiana Columbus Developers, Old Columbus Holiday Inn, Officer Gary Coon, and Deputy Ronald Hoskins have all filed timely answers to Thornburg's second amended complaint. Defendants City of Columbus, Bartholomew County Sheriff and Board of Commissioners of Bartholomew County filed motions to dismiss or to update their motion to dismiss on April 28, 1987 and May 8, 1987, respectively. The County's motion was accompanied by an affidavit. On September 4, 1987, according to the dictates of Fed.R. Civ.P. 12(b), the court ordered these motions converted to motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The parties were given fifteen (15) days from that date to present the court with additional pertinent material.

On September 18, 1987, plaintiff filed an additional response in view of the court's conversion of the motion. No responses have been filed by the other parties so the court will rely on the previously filed pleadings, affidavits, and motions to decide the issues.

As with all summary judgment motions, none will be granted unless the court finds, based on the pleadings, motions, discovery material and affidavits, that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party's reasonable allegations are to be accepted as true and all doubts will be resolved against the movant. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir.1984). Inferences drawn from the underlying facts in the pleadings and documents must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Therefore, unless the city and county defendants have shown that no genuine issue of material fact exists to prevent judgment in their favor, both motions must be denied.

*Factual Background*

With his second amended complaint, Thornburg establishes the following scenario for the evening of March 6, 1986. Thornburg was a paid guest at the defendant Old Columbus Holiday Inn. He objected to the pool in the motel being closed at midnight, maintaining that this was a change of motel policy on this date because of the Indiana High School Basketball Regional contests being held in the city. Plaintiff contends that he was treated rudely by the night manager of the Holiday Inn and told to return to his room or be arrested. When plaintiff requested the manager's name he was arrested by defendant Gary W. Coon, taken to the Bartholomew County Jail, incarcerated at the demand of the night manager, and charged with criminal trespass. He contends the arrest was

without probable cause, in that arresting officer Coon was aware that plaintiff was a paid guest at the motel.

Plaintiff also alleges that he was subjected to an illegal search when required to submit to a Breathalyzer test which resulted in a reading of .16 blood alcohol content. Plaintiff contends that the defendant Sheriff Department's policy of requiring anyone intoxicated at the time of arrest, regardless of the arresting charge, to submit to a Breathalyzer constituted coercion because of an express threat of loss of driving privileges to those who refused. In addition, he contends that the Breathalyzer was not authorized by law or court rule. The plaintiff alleges that he was then strip searched, detained in a cell, and not allowed to post bond for more than eight hours. The Bartholomew County prosecutor dismissed the charge almost immediately upon verification of the motel registration.

*Plaintiff's 42 U.S.C. § 1983 claim against the defendant City*

In the second amended complaint, the plaintiff makes the following allegations against the City of Columbus. First, he claims that the City is the legal entity responsible for the Columbus Police Department, which has the primary duty of enforcing state and local law, and that defendant Gary Coon was a member of the Columbus Police Department. He alleges that on March 6, 1986, Officer Coon arrested him on a charge of criminal trespass, at the request of the night manager of the Old Columbus Holiday Inn, where plaintiff was a paid guest. This charge was dismissed almost immediately by the Bartholomew County Prosecutor upon verification of the plaintiff's motel registration. Plaintiff further alleges that his fourth and fourteenth amendment rights were violated by the City and its officers in that

> the deprivation was the result of acts involving deceit and deception for as many as 19 other individuals arrested around the same night by numerous police officers without regard to individual civil rights, such as claiming to be motel management in order to enter private rooms to search for underage drinking. This was with the consent and approval of motel management.

The defendant City's motion attacks the sufficiency of these allegations. It is now well-settled law that a municipality such as the City of Columbus cannot be held liable under section 1983 for constitutional deprivations *solely* for the acts or omissions of its agents or employees. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that to state a claim against a municipality as a section 1983 "person," the plaintiff must allege that the city's employee was acting pursuant to governmental policy or "custom" when the alleged unconstitutional conduct occurred. 436 U.S. at 690–91, 98 S.Ct. at 2036. More specifically, the Court held:

> [t]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Id.* at 691, 98 S.Ct. at 2036.

The defendant City, in its motion, contends only that the plaintiff has failed to meet the *Monell* standard. This is based on its view that the plaintiff only alleges a conspiracy between the arresting officer and the defendant Holiday Inn. The City contends that the plaintiff's further allegations concerning other events during that time are conclusory and thus insufficient to meet the *Monell* standard and establish liability of the City.

The defendant illustrates only those allegations that support its contentions and ignores those facts that contradict its position. The facts ignored include the plaintiff's claim that nineteen other people were arrested around the same time by "numerous officers" without regard to their indi-

vidual civil rights. In his second amended complaint, plaintiff has set forth allegations, and specific facts in support thereof, of an official policy or an unofficial custom on the part of the City. The plaintiff has further alleged that the defendant officers were acting pursuant to this policy or custom in making arrests on or around March 6, 1986, in violation of the individual civil rights of the arrestees, including the plaintiff. Therefore, the City's alleged unconstitutional policies and customs were the "moving force of the constitutional violation" and thus meet the *Monell* standard for municipal liability. *Id.* at 694, 98 S.Ct. at 2038.

In *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985), the court held that the plaintiff must establish that his injury was proximately caused by a municipal policy, custom, or practice. Plaintiff has alleged that "19 others were arrested around the same night by numerous police officers without regard to individual civil rights, such as claiming to be motel management in order to enter private rooms to search for underage drinking." As a result of the conduct of the police officers, the plaintiff has established that the "execution of a governmental policy or custom ... by those whose edicts or acts may fairly be said to represent official policy" inflicted his injury and that if proved could hold the municipality, as a government entity, responsible. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

In the *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court held that an "affirmative link" between the custom or policy in question and the constitutional violation must be established in order to meet the *Monell* standard. In *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir.1986), the Seventh Circuit interpreted the "affirmative link" requirement by stating that

> there must be some knowledge or an awareness—actual or imputed—of the

custom and its consequences showing the municipality's approval, acquiescence or encouragement of the alleged unconstitutional violation.

While mere allegations of a municipal custom or policy may withstand a motion to dismiss a section 1983 action, in order to prevail on the defendants' summary judgment motion, the plaintiff must adduce a fact which would enable a jury to find a custom or policy on the part of the City of Columbus. *Larson v. Wind,* 536 F.Supp. 108, 111 (N.D.Ill.1982).

The plaintiff has met that burden and the *Monell* standard by his allegation of the concurrent arrests of nineteen other persons, and that those arrests were also the result of violations of individual civil rights. The court will caution the plaintiff that while he has met the *Monell* pleading standard, he will have a heavy burden at trial to present specific facts and proof of the defendant's policy or custom resulting in the alleged constitutional deprivations.

For the foregoing reasons, the defendant City of Columbus's motion for summary judgment is DENIED.

*Plaintiff's section 1983 claim against the county defendants.*

In defense to the plaintiff's complaint, the county defendants contend that there is no section 1983 liability on their part for the administration of a Breathalyzer test and the subsequent detention of the plaintiff.[1] In support thereof, they advance several arguments.

First, the defendants maintain that a fourth amendment claim cannot be stated against them for detention of the plaintiff without probable cause, as they were simply the custodial officers and not the arresting officers. As the defendants seem to recognize, however, the plaintiff's fourth amendment claim against them does not focus on his initial detention pursuant to an arrest without probable cause; rather, the plaintiff alleges that he was subjected to

---

1. The county defendants do not seek judgment in their favor at this stage on the plaintiff's claims regarding his subjection to a strip search. The court will therefore not address that issue.

*See* "Bartholomew County Defendants' Report to Court on Status of Motion to Dismiss," filed May 8, 1987.

an illegal search and seizure by the county defendants and that he was wrongfully prohibited from posting bail. The plaintiff also alleges, in paragraphs 8 and 10 of his second amended complaint, common law false imprisonment. The defendants' argument and authority are therefore not germane to the plaintiff's claims in this regard.

Second, the defendants argue that the plaintiff's detention in these circumstances was constitutionally permissible and does not amount to a constitutional deprivation upon which section 1983 liability can be predicated. In opposition, the plaintiff asserts that his claim is based, first, on the administration of a Breathalyzer test, and, second, on his consequent detention based on the results of the Breathalyzer. He argues that because the administration of the Breathalyzer was wrongful and unauthorized, his detention without the bail opportunity that would have been afforded him absent the Breathalyzer result was wrongful as well.

The defendants maintain that the plaintiff's subjection to a Breathalyzer and his consequent detention were authorized by virtue of their local Court Rule 23 and its Appendix D. In an affidavit sworn by Keith Foster, a captain in the county sheriff's department, the defendants set out their policy implementing Court Rule 23 and Appendix D:

4. Under the Rule, as applied by this Department, when an individual is arrested on a alcohol-related offense, *or is intoxicated at the time of his arrest*, he is not released from the custody of the Sheriff's Department until his blood alcohol level reaches a level of 0.05.

5. The time that the individual is held in custody is determined *from the initial blood alcohol reading results from a breathalizer* and the application of the chart utilized in Appendix D to Rule 23.

Affidavit of Keith Foster, filed August 27, 1987 (emphasis added).

The defendants' apparent implementation of Court Rule 23 and Appendix D, and their application of it to the plaintiff in this case, is based on an erroneous reading of the rule. Rule 23(A) provides:

With respect to *all* misdemeanors and Class D felonies, the Court adopts the bond schedule established in Appendix C which is attached hereto.

(Emphasis added).

The plaintiff alleges, and it seems apparent from the wording of Rule 23(A), that Appendix C is a bond schedule approved by the court that would allow the arrestee to post reasonable bail and be released for all misdemeanors and Class D felonies, promptly after arrest and processing. Therefore, because the plaintiff was arrested and charged with criminal trespass, a Class A misdemeanor, bond would have been available to him based solely on the arresting charge.

The defendants contend, however, that the plaintiff's arrest constituted an "alcohol-related offense" as set out in Appendix D to Court Rule 23, which provides in pertinent part:

WHEREAS the Court feels it is necessary to make sure that a person arrested for an *alcohol related offense*, where their [sic] blood alcohol content is .10 or above, is not prematurely released from the Sheriff's custody after arrest.

IT IS ORDERED that persons arrested for *operating a vehicle under the influence* shall not be released from the Sheriff's custody until a sufficient number of hours have elapsed to permit the blood alcohol content within that person's blood system to dissipate in the following fashion.[2]

(Emphasis added). The court initially points out that in order to apply Appendix D, which includes the correlation table of blood alcohol content to "minimum hours before release," to a given arrest situation, the arrest must fall under Court Rule 23(C)

---

**2.** A table, which has been deleted, lists the minimum hours before release based on the applicable blood alcohol content.

or 23(D). Section (A) of Rule 23 suggests that on these facts bond was available to the plaintiff because the arresting charge was a misdemeanor, so no detention or Breathalyzer would have been authorized. Section (B) deals with "all capital offenses and felonies" and is inapplicable. Section (C) relates to "operating a vehicle while intoxicated," also not applicable on these facts. Section (D) states in pertinent part:

> Refusal of Blood Alcohol Analysis. Any person arrested or *charged with operating a vehicle while intoxicated* who refuses to submit to a blood/alcohol analysis test shall be held in the custody of the Bartholomew County Sheriff for an initial period of four (4) hours....

(Emphasis added). The plaintiff was arrested for criminal trespass, not operating a vehicle while intoxicated, so this section is not applicable. Therefore, the defendants cannot logically make the move to apply Appendix D of Rule 23, which requires minimum detention based on blood alcohol content results, to Thornburg.

By Keith Foster's affidavit, the defendants have admitted a policy of requiring Breathalyzer tests and attendant detention based on Appendix D, not only for those arrested on an alcohol-related offense, but to anyone, regardless of the charge, who is intoxicated at the time of the arrest. The use of the Breathalyzer and the detention for those who are not charged with alcohol-related offenses is not authorized by Court Rule 23 or Appendix D and therefore was not required on these facts, as a matter of law.

Assuming arguendo that the defendants were entitled to look to Appendix D (even though the plaintiff had not been arrested for driving while intoxicated), Appendix D's broader language, which contemplates testing and detention for "alcohol-related offenses," would not have applied to the plaintiff's arrest. The construction and common sense meaning of the phrase "alcohol-related offense" suggests that intoxication must be an element of the crime in order for it to be described as an "alcohol-related offense." Intoxication is not an element of criminal trespass, and the court finds that criminal trespass is not encompassed by a reasonable interpretation of the term "alcohol-related offense."

The defendants also contend that the plaintiff's allegation of being "coerced" into taking the Breathalyzer with the threat of loss of driving privileges cannot be maintained. They argue that "this type of coercion or duress has long been settled by the courts of federal and state jurisdiction in the context of sustaining the constitutionality of the 'implied consent' laws." The defendants are correct in their assertion that the constitutionality of "implied consent" laws, which provide for the mandatory suspension of a driver's license for refusal to take a Breathalyzer test, has been upheld by the Supreme Court. *See Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). The defendants' reliance on an "implied consent" law is misplaced in this case, however, because those laws apply only to refusals of Breathalyzer tests upon arrest for driving under the influence or some other alcohol-related offense. As determined above, criminal trespass could not, by any reasonable interpretation, come under the "implied consent" umbrella. The court cannot therefore find as a matter of law that the allegedly coerced administration of a Breathalyzer on the plaintiff was authorized by any law of "implied consent."

The foregoing discussion demonstrates that the defendants' subjection of the plaintiff to a Breathalyzer and detention was not authorized by the rule upon which they relied. To say that these measures were unauthorized, however, is not synonymous with concluding that they were unconstitutional. *See, e.g., Kompare v. Stein,* 801 F.2d 883, 888 (7th Cir.1986).

■ The primary question raised by the defendants' motion is, therefore, whether the defendants' alleged coercion of a Breathalyzer and the resultant detention of the plaintiff were constitutional as a matter of law. The plaintiff maintains that these measures ran afoul of the fourth amendment.

The fourth amendment affords protection against unreasonable search and sei-

zure without warrant. There is authority for the proposition that a breath test is a "search" subject to the requirements of the fourth amendment. *See Burnett v. Municipality of Anchorage,* 806 F.2d 1447 (9th Cir.1986) (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). *See also Shoemaker v. Handel,* 795 F.2d 1136 (3d Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986). The defendants maintain that the plaintiff consented to the search expressly or by virtue of the laws of implied consent. As the court has already determined, implied consent has no application in this case. Beyond this, the voluntariness and reasonableness of the search are questions of fact under the circumstances of this case.

As to the plaintiff's detention without opportunity to post bail, the court initially notes that the fourth amendment requires a judicial determination of probable cause as a prerequisite to an extended restraint of liberty following arrest. *Llaguno v. Mingey,* 739 F.2d 1186 (7th Cir.1984), *cert. dismissed,* — U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986) (citing *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed. 2d 54 (1975)). In this case, the plaintiff alleges that he was so held for eight hours. The question, therefore, is whether this restraint of the plaintiff's liberty was reasonable under these circumstances as a matter of law.[3]

The defendants first argue that courts have held detentions of twenty-four hours prior to judicial determinations of probable cause constitutionally permissible. *See Llaguno,* 739 F.2d at 1196 (citing cases). *Llaguno* and the other decisions cited therein are based, however, on the conclusion that a reasonable period must be afforded custodial officers for administrative processing of the arrestee and for arranging a hearing before a magistrate. The defendants in this case have not proffered evidence that these factors necessitated the plaintiff's eight-hour detention. Rather, they maintain, first, that Court Rule 23 justified the detention. The court has already determined, however, that that rule's guidelines for detention did not apply in this case. Second, the defendants argue that the department could have been subject to civil liability if it released a person incapable of caring for himself or likely to injure others. *See Iglesias v. Wells,* 441 N.E.2d 1017 (Ind.Ct.App.1982). The reasonableness of detention based on this justification depends on facts and circumstances not in evidence. For example, if the plaintiff had had someone available and willing to transport him from the jail, the defendants' purported concern over civil liability may not have been reasonable. Third, the defendants suggest that the plaintiff, if released, could have been arrested for public intoxication. This argument has the same infirmity as the last: it depends on all the factual circumstances present. Furthermore, the court notes that the plaintiff had not been arrested for public intoxication and that the level of intoxication necessary to sustain a charge of public intoxication could be far greater than that upon which driving under the influence is based. Finally, the court is troubled by logic of the defendants' argument in this regard. By analogy, it would justify detention where the police have gone to a person's home, arrested him while he was taking a shower, and then detaining him merely because his release might result in a charge of public indecency.

For all of these reasons, the court finds that genuine issues of fact material to the reasonableness of the plaintiff's detention preclude summary judgment for the defendants on the plaintiff's fourth amendment claims.

■ The defendants also argue that the plaintiff cannot prove an "official policy" or an "unofficial custom" as mandated by

3. The court assumes, although the parties have not made it clear, that the county defendants did not learn of the dismissal of the criminal trespass charges at any time during the plaintiff's eight-hour detention. Had they learned of the dismissal prior to the plaintiff's release and were relying on the Breathalyzer results as the sole basis for the continued detention, the detention could be subject to a stricter scrutiny. *See Llaguno,* 739 F.2d at 1196–97.

*Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. Specifically, they maintain that their policy of complying with court rules (rule 23) cannot be linked to any constitutional deprivation. This argument is flawed for at least two reasons. First, the court has already established that detention pursuant to rule 23 was not authorized in this case because the plaintiff had not been arrested for driving while intoxicated or any other alcohol-related offense. Second, the defendants, with the affidavit of Keith Foster, have admitted a practice of administering a Breathalyzer and detaining persons intoxicated at the time of arrest without regard to other circumstances that may have rendered such measures unreasonable. The plaintiff has therefore met his *Monell* pleading requirements.

■ As a final matter, the county defendants argue that they are entitled to a qualified immunity from any individual liability for damages. Qualified immunity applies only to the extent relief is sought against an official in his individual capacity. Although the plaintiff's complaint does not indicate whether such relief is sought, the court will address the matter at this stage, because the doctrine actually affords immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985).

■ Whether a defendant is entitled to qualified immunity for his actions is generally a question of law for the judge to decide. *Whitt v. Smith,* 832 F.2d 451 (7th Cir.1987) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982)). Under the doctrine of qualified immunity, government officials are shielded from civil liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. *See also Green v. Carlson,* 826 F.2d 647 (7th Cir.1987). The question, then, is twofold: Did the defendants violate clearly established constitutional or statutory

rights of the plaintiff? Would a reasonable official have known that what he was doing violated those rights?

The Supreme Court has further elucidated this standard recently in *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Court noted that while certain general rights (such as due process) are clearly established, a more specific interpretation of that general right may not be clearly established such that, under an objective test of legal reasonableness, an individual official would have known he was violating that right. *Id.* at 3038–39. Hence, the Court said:

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Id.* at 3039 (citation omitted).

■ Given these parameters of the doctrine, the court holds that the county defendants are entitled to immunity for any individual liability. This conclusion is based on several factors. First, although the general fourth amendment prohibition against unreasonable searches and seizures is clearly established, its specific interpretation to preclude administration of Breathalyzer tests and detentions pursuant thereto is not clearly established such that a reasonable officer would have known he was violating the plaintiff's rights. Furthermore, the court has indeed not yet determined that these measures, under the attendant circumstances, were violative of the plaintiff's constitutional rights. Finally, the individual officer was in this case acting pursuant to a stated department policy or practice. Although the court has determined that the department's imple-

mentation of Court Rule 23 was flawed, it does not follow that the individual officer should reasonably have known that it was flawed, or, even if the officer knew that the department's practice was not in conformity with Court Rule 23, that the lack of conformity resulted in an unconstitutional deprivation. For these reasons, the plaintiff's claims will proceed against the county defendants in their official capacities only.

*Conclusion*

The summary judgment motion of the defendant City of Columbus is DENIED. The summary judgment motion of the Bartholomew County defendants is also DENIED, except with respect to the qualified immunity defense. On that ground, the motion is GRANTED, and suit shall proceed against the county defendants in their official capacities only. The defendants have not sought summary judgment on the plaintiff's claims based on an alleged unconstitutional strip search, and the court's rulings do not apply in any respect to those claims.